**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

In re:

      EDWARD W. LYLE,

           Debtor

Case No. 2026-00019-ELG

Hon. Elizabeth L. Gunn

**UNOPPOSED MOTION TO ENTEND BY UP TO FOUR MONTHS THE DEBTOR'S EXCLUSIVITY PERIOD FOR FILING A PLAN OF REORGANIZATION**

The undersigned Debtor now moves for an extension of up to four months – i.e, up to and including September 28, 2026 - on his current exclusive period for filing a plan of reorganization. The Debtor would have the right to terminate this exclusivity period at any time upon written notice to the Court.

In support thereof, the Debtor states as follows:

## I.      BACKGROUND

This proceeding has its roots during the 2020-2022 period of the Covid virus, in which the federal and local courts in the District of Columbia ("D.C." or "District") were shut down. and with it the Debtor's practice before those courts. That in turn shut down his ability to make the monthly first trust mortgage payments on his residence at 1805 – 45th Street NW, Washington D.C. 20007 (the "Residence"), which has been the center of the Debtor's family ever since it was built in 1940.

When the virus subsided and the courts reopened in 2022, the Debtor soon was able to resume such payments, but when he tried to do so,  the first trust lender refused to accept his payment on grounds that he was so far behind that his only recourse was to pay the entire arrearage and bring the mortgage current.  This the Debtor was and remains unable to do.

The first trust lender eventually brought a foreclosure suit in the D.C. Superior Court (Case No. 2023-CA-003315), and when a satisfactory resolution of that action was not forthcoming, the Debtor filed a petition for Chapter 11 relief on October 2, 2025 (Case No. 25-00450-ELG), which this Court later dismissed without prejudice.  The Debtor then filed the present Chapter 11 proceeding on January 14, 2026.  The filing of that petition allowed other claims to be filed against the Debtor which are now subject to resolution in this Court.

## A.    The Federal Litigation

The Debtor's objective since well into the Covid virus in 2020 has been to prevent a sale of his Residence by satisfying the claims against him by other means.  Foremost among the means that he is now pursuing is a lawsuit filed under 42 U.S.C. § 1983 by the Debtor as counsel for one of the parties  That case is now underway in the U.S. District Court for the District of Columbia before Judge Ana Reyes (*Sieber, et al. v. District of Columbia, et al.,* Case No. 1:24-cv-003247).  The Debtor's recently-filed Second Amended Complaint ("SAC") (Separately Attached  Exhibit) asserts claims arising from a civil enforcement case brought on July 31, 2019 by D.C.'s Office of the Attorney General ("OAG") under the D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3901*et seq.* (*District of Columbia v. Precision Contracting Solutions, et al.,* Sup Ct. Case No. 2019-CA-005047).  The SAC asserts the following claims, among others, arising from the actions of Judge Todd Edelman, then Chief Judge Anita Josey-Herring, current Chief Judge Milton C. Lee, their court administrator Thomas Hedgepeth, the

current Attorney General Brian Schwab, trial attorneys and supervisors from his Office of the Attorney General ("OAG"), and various parties in the private sector who interacted with them:

\*      That OAG, a de facto party in its civil enforcement case, unilaterally ordered U.S. Marshals to come to Judge Edelman's courtroom and be in contact with the jury, and did so with no notice to the defendants in the case.

\*      That OAG engaged in ex parte communications with Judge Edelman about OAG's order to the Marshals and did so without either OAG or Judge Edelman informing the defendants about such communications.

\*      That the former Chief Judge Josey-Herring and current Chief Judge Milton C. Lee of the Superior Court engaged in a cover-up of Judge Edelman's actions by refusing to release, in their entirety and unexpurgated, the tape recordings of Judge Edelman's courtroom when the above activities took place.

\*      That Judge Edelman refused to recuse himself or hold a hearing on the defendants' motion for a mistrial.

\*      That the D.C. Court of Appeals ("DCCA") responded with silence when the defendants filed a DCCA Rule 21 motion seeking an order to Judge Edelman to recuse himself.

\*      That Judge Edelman subsequently issued judgments in the case against the defendants in the amount of $2,967,364.24 without any demonstration of injury by OAG, or finding of injury by the jury, to the complaining witnesses and other former customers of the defendant Precision Contracting Solutions, LP ("PCS").

\*      That part of those judgments was to reimburse almost all former customers of PCS in the full amount of their contracts even though all but five of those former customers never testified at trial or complained about the services of PCS.

3

\*       That such activities, taken together, violate the defendants' rights under the First, Seventh, Eighth and Fourteenth Amendments to the U.S. Constitution.

\*       That four provisions of the CPPA are unconstitutional.

These SAC claims largely track those in the plaintiffs' first amended complaint, which Judge Reyes read at the beginning of this year and then told the representatives of the defendants in a February 26, 2026 status conference that some of the plaintiffs' claims were likely to survive a motion to dismiss and the defendants had better settle this matter. [1]   Since filing the Second Amended Complaint, the Plaintiffs have agreed to dismiss the damages claims against the three judges but not their participation in the case as witnesses.

Judge Reyes has set a deadline of May 28, 2026 – one day after the next status conference scheduled in this proceeding – for any motion to dismiss ("MTD") parts or all the SAC from any defendant.  Judge Reyes has set a deadline of July 10, 2026 for plaintiffs' opposition to any MTD from Mr. Hedgepeth, and any reply from him no later than August 3, 2026, and July 27, 2026 for plaintiffs' opposition to any MTDs filed by other defendants and August 27, 2026 for any reply they may make.  Under the current schedule, therefore, all briefing is to be completed by the end of August.

Since each of the defendants has little to lose by filing an MTD and a reply, the Debtor anticipates that most defendants will do so.  Once both sides see the other's arguments, the Debtor anticipates there will be incentives to settle even before Judge Reyes has ruled.

---

[1] A transcript of that conference has been requested and was promised by the transcripts office by May 18, 2026.  Despite repeated requests by the Debtor, it has not been delivered.

The undersigned Debtor, working on a contingency basis in this case, will be entitled to receive one third of any settlement amount received or one third of any litigation award plus attorney's fees.

**B.    The Z3 Metaverse**

A second possible source of funds to the Debtor in the coming months is his 18% interest and position as internal counsel in Song fi, LLC, a limited liability company at 300 Delaware Avenue, Wilmington, DE19801.  Song fi, operating under the d/b/a of the "Z3 Metaverse," has developed a proprietary and not yet released social media site that has recently been publicized over the internet by major financial institutions such as Fidelity Investments.  To identify just a few of the many features of this new site:

- The first operating system built on decentralized blockchain technology for unsurpassed security for users in making purchases and other transactions.

- Enhanced privacy for users by not tracking their preferences while on the site.

- No ads on this system to distract users.

- Revenue sharing with users to offset their $24 monthly subscription.

- Video creation, photo editing and other programs integrated into the site to save users fees that they currently pay for often inferior existing programs.

- AI enhancement throughout the site.

A more extensive discussion of this new site is found, among other places, in an investors newsletter recently sent by Fidelity Investments to its customers (Exhibit 1).

The Debtor and others at Song fi are now in discussions with various potential partners to bring investments and other types of resources into the company.  As part of those discussions,

part of the Debtor's 18% interest may be sold to meet his obligations to creditors in this proceeding..

## II.   ARGUMENT

**A.   During any Extension Granted by This Court of the Debtor's Exclusivity Period, There Will Be No Doubt That Each Creditor Will Ultimately Receive The Amount Awarded by This Court on Its Claim.**

At present, the claims against the Debtor are as follows:

The Debtor's first trust mortgagee NewRez Financial: $1,738,660.10. [2]

The group represented by Scott Gerber:   $580,000.00

The Internal Revenue Service: $175,469.69

Charles Langdon: est. $55,000.00

The total of these claims is 2,549,129.69.

Conversely, the value of the Debtor's Residence has recently been set by a prominent online appraisal service at $3,616,500.00.  (Exhibit 2)

. In addition, as detailed in the Debtor's January 14, 2026 petition under Chapter 11, the Debtor's estate has $271,064.24 in other assets.

Even if each creditor's claim were to be paid in full, therefore, the Debtor's estate is thus far "above water" for purposes of this proceeding, and the estate is increasing as the Debtor's professional fees exceed his expenses.

The Debtor, furthermore, intends to later challenge certain claims in this proceeding as being excessive or otherwise objectionable, which may significantly increase this "above water" amount even more.

---

[2] Amount stated on the website of Shellpoint Mortgage Servicing, the collections agent for NewRez Financial, on May 24, 2026.

This means that the claim of each creditor is now assured, and will continue to be assured during any extension of the Debtor's exclusivity period, of being paid in full at the amount ultimately determined by this Court.

**B.     The Passage of Time During An Extension of the Exclusivity Period Will Not Erode the Value of Each Claim Now Pending.**

At present, interest is being charged on the amounts being claimed by two of the creditors: i.e., NewRez Financial on the Debtor's first-trust loan, and the Internal Revenue Service on back taxes allegedly owed by the Debtor.  To assure that the remaining creditors – the Gerber Group and Charles Langdon – do not suffer an erosion of their claim amounts during an extension of the exclusivity period, the Debtor is prepared to add interest to the amount ultimately awarded to Gerber and Langdon at the rate of three percent (3.0%)  during the exclusivity extension for whatever amount is later awarded by the Court on that claim or agreed to in settlement.

**C.     The Debtor Is Seeking More Time to Determine the Assets He Has to Pay His Creditors and Therefore Has Not Yet Entered Into Negotiations With Them to Resolve Their Claims.**

The Debtor has not yet attempted to negotiate with each of the creditors regarding their claims because the Debtor presently does not know what assets might become available to him from a settlement or award from the Federal Litigation or what capital or revenue might be generated from the Z3 project that he may be able to convert to liquid assets.  The objective of this motion is to gain more time to make those determinations.   As soon as the Debtor has a reasonably reliable idea of these prospects, he will promptly seek to engage with the creditors to develop a plan to reorganize his debts or pay them off entirely.

### III.   CONCLUSION

The Debtor has shown good cause above for an extension of time in which seek alternative ways of meeting his obligations to his creditors rather than selling his home.  The creditors are fully secured toward receiving the amounts rightfully due to them, and none of them will suffer an erosion of those amounts if this extension is granted.  This Court should therefore grant the requested extension of the Debtor's exclusivity period for filing a plan of reorganization.

### IV.   OBJECTION

Any objection to this motion must be filed on or before June 9, 2026.

Respectfully submitted,

*Edward W. Lyle, pro se*
1805 - 45th Street NW
Washington DC 20007
Tel:  (202) 333-4280
Fax: (202) 333-4282
Email: *ewlyle@west1805.com*

May 26, 2026

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

In re:

    EDWARD W. LYLE,

        Debtor

Case No. 2026-00019-ELG

Hon. Elizabeth L. Gunn

**ORDER**

UPON CONSIDERATION of the Debtor's Unopposed Motion to Extend by Up to Four Months

the Debtor's Exclusivity Period for Filing a Plan of Reorganization , and for good cause shown, it is on this

_____ day of 2026 hereby

ORDERED, that the Motion shall be, and hereby is, GRANTED, and it is further

ORDERED, that the Motion is hereby deemed filed as of the date of this Order.

_____
Elizabeth L. Gunn

**REQUEST FOR CONSENT**

I hereby certify that I requested consent for the relief stated in the attached **MOTION TO ENTEND BY UP TO FOUR MONTHS THE DEBTOR'S EXCLUSIVITY PERIOD FOR FILING A PLAN OF REORGANIZATION** from all creditors of record in an email sent at 4:13 p.m. on May 25, 2026, and in the same email sent at 12:55 a.m. on May 26, 2027.  By return mail, Charles Langdon consented to such relief.  As of 2:15 p.m., May 26, 2026, no other creditors had responded.

_/s/ Edward W. Lyle_
Edward W. Lyle

**CERTIFICATE OF SERVICE**

I hereby certify that I have sent, this 26th day of May, 2026 via first class mail, postage prepaid, a copy of the attached **MOTION TO ENTEND BY UP TO FOUR MONTHS THE DEBTOR'S EXCLUSIVITY PERIOD FOR FILING A PLAN OF REORGANIZATION** motion to all parties in this matter who are not CM/ECF qualified.

_/s/ Edward W. Lyle_
Edward W. Lyle

10